UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-60194-CR-COHN/SELTZER

UNITED STATES OF AMERICA,

vs.

STEVEN STOLL,

            Defendant.
_____/

## REPORT AND RECOMMENDATION ON MOTIONS TO DISMISS (DE 305, 307, 311) FILED BY DEFENDANT STEVEN STOLL

I.    INTRODUCTION

THIS CAUSE is before the Court on three motions to dismiss filed by Steven Stoll: Defendant Steven Stoll's Motion to Dismiss Counts One Through Thirty-Four of the Indictment for Lack of Specificity (DE 307); Defendant Steven Stoll's Motion to Dismiss Counts 26 Through 33 (DE 305); and Defendant Steven Stoll's Motion to Dismiss Count Thirty-Four (DE 311). The motions were referred to the undersigned pursuant to 28 U.S.C. § 636 and Magistrate Rule 1(c) and (d), Local Rules of the United States District Court for the Southern District of Florida (DE 470, 489). For the reasons set forth more fully below, the undersigned RECOMMENDS that the motions be DENIED.

II.    PROCEDURAL HISTORY

On June 29, 2010, a federal grand jury returned a 34-count Indictment alleging mortgage fraud against 13 defendants. See Indictment (DE 1). Steven Stoll ("Stoll"), a licensed mortgage broker and licensed attorney, is charged in each of the 34 counts. See id. More specifically, Stoll is charged as follows: Count 1 – conspiracy, in violation of 18 U.S.C. § 1349; Counts 2-12 – mail fraud, in violation of 18 U.S.C. § 1341; Counts 13-25

– wire fraud, in violation of 18 U.S.C. § 1343; Counts 26-33 – false statements, in violation of 18 U.S.C. § 1001; and Count 34 – obstruction of justice, in violation of 18 U.S.C. § 1512(b)(3). See id. Having been fully briefed, and a hearing having been held, the motions are now ripe for decision.

III.    THE MOTIONS TO DISMISS

In his motions, Stoll seeks dismissal of some or all of the counts, and he advances independent grounds in each motion.

A.    Motion as to Specificity – Counts 1-34

On September 17, 2010, Stoll filed a Motion to Dismiss Counts One Through Thirty-Four of the Indictment for Lack of Specificity (DE 307). On October 18, 2010, the Government responded (DE 430), and on October 25, 2010, Stoll replied thereto (DE 453). Pursuant to the undersigned's order, on November 3, 2010, the Government filed a supplemental response (DE 502).

In the Motion, Stoll argues that the Indictment "contains such an extraordinary lack of specificity that it fails to provide [him] with adequate notice of the accusations against him." Motion at 1 (DE 307). As to Count 1 – the conspiracy allegation – Stoll argues that the Indictment is deficient for failing to identify: the particular documents and false statements that were submitted; the particulars that render each statement false; the defendant who prepared the false statement; the victim of each false statement; the materiality of each false statement; the money or property that was obtained as a result of each false statement; Stoll's knowledge of the scheme to defraud lenders; the particulars of the fraudulent monetary transfers; the properties managed by Guaracino; the particulars and meaning of the "cash out scheme"; the particulars of the non-disclosed payments and

2

kickbacks; the specific properties that comprise the "more than 38" transactions in the scheme; and the specific loans that comprise the $16,500,000 in fraudulent loans procured.

As to Counts 2-33 – the substantive mail fraud and wire fraud allegations – Stoll argues that because the Indictment incorporates by reference the allegations set forth in paragraphs 1 through 28 (General Allegations and Count 1 - Conspiracy), those substantive counts inherit the same infirmities as Count 1 with respect to specificity and particularity.

And as to Count 34 – the obstruction of justice allegation – Stoll argues that the count fails to identify the following: the specific date of the offense; his particular role in the offense; the name of the investigator; the specific documents that were deleted; the content of the deleted documents; the reason the deleted documents were false; and the reason the deleted documents would have revealed criminal conduct had they been disclosed.

According to Stoll, the sum of the deficiencies renders it impossible for him to investigate and prepare his defense, and they give the Government the latitude to shift its prosecution theory at will and to amend the Indictment by attempting to convict him for conduct never considered by the Grand Jury, in violation of his Fifth and Sixth Amendment rights.[1]

---

[1] The undersigned notes that omitted details constituting the basis for the instant Motion to Dismiss also formed the basis of an earlier Motion for a Bill of Particulars (DE 174). The District Court, however, granted that motion only as to four specific categories: the identity of the false statements in each of the property files about which the Government intends to offer evidence; Stoll's role in procuring the fraudulent mortgages for each property; the identity of the State of Florida investigator referred to in Count 34

1.    The Law

In pertinent part, the Fifth Amendment guarantees to criminal defendants the right to be charged by way of a grand jury indictment. See U.S. Const. amend. V. And the Sixth Amendment guarantees to criminal defendants the right "to be informed of the nature and cause of the accusation" U.S. Const. amend. VI.[2]

The Federal Rules of Criminal Procedure speak to the content required of an indictment, stating that it "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged . . . ." Fed. R. Crim. P. 7(c)(1).  The Supreme Court has observed that the Rules "were designed to eliminate technicalities in criminal pleadings and are to be construed to secure simplicity in procedure." United States v. Resindiz-Ponce, 549 U.S. 102, 110 (2007) (citations and internal quotations omitted). The Court has also drawn a contrast between the current rules and the previous common law practice, writing that "[w]hile detailed allegations might well have been required under common-law pleading rules . . . they surely are not contemplated by Rule 7(c)(1)." Id. (citations omitted).

The Supreme Court has provided critical guidance for assessing the constitutional sufficiency of an indictment:  it must "first, contain[] the elements of the offense charged

_____

(charging obstruction of justice for deleting subpoenaed records); and the method by which the forfeiture was calculated (DE 269).  That the Court denied the balance of Stoll's demands for particulars would suggest that most of Stoll's complaints in the instant Motion to Dismiss are neither essential nor necessary for him to prepare his defense or to plead double jeopardy.

[2] By arguing that it is not pled with sufficient specificity, Stoll is effectively arguing that the Indictment violates his Sixth Amendment right to be informed of the accusations against him.

4

and fairly inform[] a defendant of the charge against which he must defend, and, second, enable[] him to plead an acquittal or conviction in bar of future prosecutions for the same offense." Hamling v. United States, 418 U.S. 87, 117 (1974) (citations omitted) (emphasis added). In informing a defendant of the charge, "the language of the statute may be used in the general description of an offence, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, . . ." Id. at 117-18 (citations and internal quotations omitted). Similarly, the Eleventh Circuit has made clear that "[a]n indictment that tracks the wording of the statute under which an offense is charged will meet these constitutional requirements if the language sets forth the essential elements of the crime, and adequately specifies the time, place and participants involved." United States v. Harrell, 737 F.2d 971, 975 (11th Cir. 1984) (citations and internal quotations omitted).

Significantly, however, an indictment charging a conspiracy "need not be as specific as an indictment for a substantive count." Id. More particularly, "[n]o overt acts in furtherance of a conspiracy need be alleged in order to survive a motion to dismiss. The specificity that [the law] requires is only that detail necessary to set forth the elements of the offense charged, as opposed to the evidentiary details establishing the commission of the crime." Id. at 975 n.4 (citations omitted) (emphasis added). Similarly, the Supreme Court has observed that "[t]he particularity of time, place, circumstances, causes, etc., in stating the manner and means of effecting the object or a conspiracy . . . is not essential to an indictment." Glasser v. United States, 315 U.S. 60, 66 (1942) (emphasis added). In the Court's view, "[s]uch specificity falls rather within the scope of a bill of particulars . . ." Id.

5

2.    The Indictment

A close examination of the Indictment makes clear that it is sufficient to enable Stoll to identify the conspiracy, as well as the substantive crimes, with which he is charged. Preliminarily, the undersigned notes that Stoll is named in all 34 counts of a 57-page Indictment, including a conspiracy count and substantive counts for mail fraud, wire fraud, false statements, and obstruction of justice. Each count alleges the date and location of the offense and cites to the pertinent statutory violation. The Indictment identifies the victim lenders, the roles of the several co-conspirators, the object of the overall conspiracy, and numerous overt acts allegedly committed in furtherance thereof.

a.    General Allegations

The Indictment commences with "General Allegations" that identify eleven mortgage lenders, two businesses owned and operated by Stoll (TurnKey Title Corporation and The Lending House, Inc.), and businesses owned and operated by co-defendants (Family Lending Group, Inc., and The Home Buyer's Group LLC). See Indictment at 1-4 (DE 1). The General Allegations describe the mortgage lending process for real property, as well as several customary forms on which lenders rely in evaluating loan applications; they also describe the HUD-1 closing statement, the role of a closing agent (such as Stoll), and a closing agent's fiduciary responsibility to mortgage lenders. See id. at 4-5. These descriptions are followed by a listing and brief description of each of the 13 defendants. See id. at 5-6. In particular, the Indictment describes Stoll as a licensed mortgage broker and licensed attorney whose real estate litigation firm was co-located in office space with TurnKey Title Corporation and The Lending House, Inc. See id. at 5.

6

b.    Conspiracy Charge

Count One of the Indictment charges a criminal conspiracy. It sets forth the beginning and ending dates of the conspiracy, the location of the offense, the alleged violations – mail fraud, wire fraud, and false statements to a government agency – and the corresponding statutory citations. See id. at 7-8. Significantly, the charge tracks the statutory language of 18 U.S.C. §§ 1001,[3] 1341, 1343, and 1349, and that language conforms with charging language customarily used in this District.

The Indictment then sets forth the object of the conspiracy, that is, the essence of the defendants' criminal activity. See id. at 8-9. As alleged, the defendants sought to unlawfully enrich themselves by submitting, and causing the submission of, materially false and fraudulent mortgage applications (Form 1003s) and Settlement Statements (Form HUD1s) to mortgage lenders. These false and fraudulent applications induced lenders to fund mortgages exceeding $16,500,000; the funds were used to purchase properties that were later rented and sold for a substantial profit.

The statement of the conspiracy's object is followed by 19 detailed descriptions of the manner and means by which the defendants are alleged to have committed the mortgage fraud. See id. at 9-13. According to these descriptions, to obtain the mortgages, the defendants caused the submission to lenders of false documents, including: false and inflated income, salary information and job titles on Form 1003s; inflated bank account balances for the purchasers on Verification of Deposit Forms ("VODs"); forged Lease Agreements and Occupancy Affidavits; fraudulent letters of explanation to lenders; various

---

[3] The Government has moved to strike the reference to 18 U.S.C. § 1001, as a conspiracy to violate that statute cannot be alleged under 18 U.S.C. § 1349.

closing documents falsely representing that the purchasers intended to occupy (as opposed to rent or sell) the properties, including Affidavits of Occupancy, Mortgage Notes, Disclosure Notices, Borrowers' Certification and Authorization forms; and final Form 1003s that falsely listed the purchasers' currently occupied homes as "rental properties."

The Indictment then details the basic mechanics of the scheme, referencing Stoll's company four times and Stoll, personally, once; in seven additional places, Stoll is included in a general grouping of defendants. The Indictment further alleges that the defendants: caused money to be transferred from Defendant Joseph Guaracino's account held at Stoll's title company; fraudulently represented Guaracino's money as having come from the borrowers listed on the mortgage applications; caused Stoll's company to receive money from Guaracino to hold in escrow for use in real estate closings for the various co-defendant purchasers; filed quit claim deeds for the purchased properties, adding Guaracino as an owner after the purchase; as part of the defendants' "cash out scheme," caused the creation, at closing, on the HUD 1 of an "escrow withhold" entry to Stoll's title company, resulting in the diversion of those funds to Guaracino; received or caused the receipt of kickbacks from the sale of the properties; caused Stoll's title company to profit by receiving closing fees for each mortgage issued after acting as an escrow and real estate closing/settlement agent; and caused the real estate transaction closings that were part of the scheme.

In addition to describing the means by which the mortgage fraud occurred, the Indictment sets forth a series of overt acts.[4] See id. at 13-44. The overt acts are grouped

_____

[4] The undersigned notes that although the Indictment does set forth a series of overt acts, the mail and wire fraud conspiracy statute, 18 U.S.C. § 1349, does not contain

8

by reference to 14 properties; each property is followed by sub-parts describing the fraudulent activity associated with that property and identifying the particular defendants who participated in that activity. A total of 156 overt acts are set forth; Stoll is named in 66 of the acts, and Stoll's company is named in 48.

In sum, the conspiracy count alleges the necessary elements of the offense – that the defendants combined, conspired, confederated, and agreed to commit offenses against the United States, specifically, mail fraud, wire fraud, and false statements in a matter within the jurisdiction of the United States, and that they did so knowingly and willfully. See 18 U.S.C. § 1349. The count identifies the conspiracy in which Stoll participated by identifying the time, place, and participants. See United States v. Harrell, 737 F.2d 971, 975 (11th Cir. 1984) (stating that indictment is constitutional when it sets forth essential elements of crime and adequately specifies time, place, and participants; noting that conspiracy allegation need not be as specific as substantive allegation). The count describes the object of the conspiracy – using false and fraudulent documents to induce mortgage lenders to fund mortgages for the purchase of rental and investment properties – and the types of documents that contained these false statements. The count also describes the types of false representations, such as the amount, source, and nature of the borrowers' funds, as well as their intentions with respect to occupying the properties. The count advises Stoll that the reason the alleged scheme is illegal is that lenders rely on the truthfulness of an applicant's financial representations in deciding whether to fund a mortgage loan. Finally, the count's General Allegations, Object of the Conspiracy, Manner

---

an overt act requirement. See United States v. Shabani, 513 U.S. 10, 12 (1994) (refusing to imply overt act requirement where not explicitly contained in the statute).

and Means, and the Overt Acts sections describe Stoll's connections to the scheme, both through his companies' roles and his own actions.

          c.     Substantive Charges

The conspiracy count is followed by 33 substantive counts; each one names Stoll as a defendant and incorporates the "General Allegations," as well as the (conspiracy count's) description of the object and the manner and means employed. See id. at 44. Specifically, Counts 2-25 are composed of 11 mail fraud and 13 wire fraud counts. See id. at 44-51. These counts are similar in construction to the overt act provisions in the conspiracy count. Each count alleges a property address, a date of mailing or wiring, and a description of the mailing or wiring. And the wire descriptions identify the lender originating the wire, the sum of money wired, and the recipient of the wire, which in all cases was an escrow account at Stoll's title company.

The substantive mail and wire fraud counts (Counts 2-25) are followed by 8 substantive counts (Counts 26-33) of making a false statement to a government agency. See id. at 51-54. Specifically, Counts 26-33 set forth a date and description of each false statement. And each description identifies the document containing the alleged false statement, the property to which the false statement relates, and the reason the statement is false.

The final substantive count, Count 34, charges Stoll and a co-defendant with engaging in misleading conduct toward a Florida Department of Financial Regulation investigator. See id. at 54-55. Specifically, Count 34 alleges that in response to a Department subpoena, Stoll deleted from his company's broker files, or caused the deletion of, documents that contained materially false and fraudulent information.

### 3. Stoll's Arguments as to the Sufficiency of the Conspiracy Count

Stoll argues that the conspiracy count is flawed because it fails to identify: each false statement; each document containing a false statement; each defendant who made each statement; each victim of each statement; and the reason each statement is false. However, these alleged deficiencies are "more like an absence of detail as to how the crime was committed than a failure to specify what the crime was." United States v. Kay, 359 F.3d 738, 759 (5th Cir. 2004). Although Stoll characterizes his argument as an attack on the constitutional sufficiency of the conspiracy charge, closer examination makes apparent that it is an attack on the (alleged) lack of particulars concerning the manner and means of the conspiracy and the overt acts committed in furtherance thereof. While such additional particulars would no doubt have facilitated Stoll's trial preparation, they are not constitutionally required of a conspiracy charge. See Glasser, 315 U.S. at 66 ("[T]he particularity of time, place, circumstances, causes, etc. in stating the manner and means of effecting the object of a conspiracy . . . is not essential to an indictment."); Harrell, 737 F.2d at 975 n.4 ("No overt acts in furtherance of a conspiracy need be alleged . . . .")

Stoll argues that in the absence of the detail he seeks – the particulars of each false statement – the Government would be able to shift its theory of prosecution at will and amend the Indictment by convicting him of statements that the Grand Jury never considered. This argument misconstrues the essence of a conspiracy charge, which is the agreement to accomplish an illegal object and not any particular false statement that may evidence that agreement. See Iannelli v. United States, 420 U.S. 770, 777 (1975). Moreover, when a conspiracy is charged, the Government need not have presented to the Grand Jury, and the indictment need not have alleged, each act that is part of, or

11

committed in furtherance of, the conspiracy. See United States v. Rosenthal, 793 F.2d 1214, 1227 (11th Cir. 1986) (stating that Government not required to provide defendants with all overt acts that might be proven at trial). Stated differently, an indictment's failure to allege every false statement made in furtherance of the agreement – the conspiracy – does not give the Government latitude to amend the indictment or shift its theory of criminality; rather, it is a standard manner of alleging a conspiracy, where the criminal act is the making of the agreement, not any particular false statement.

Stoll also argues that the conspiracy count is deficient because it does not allege the materiality of the false statements. Preliminarily, the undersigned notes that if an indictment need not allege every false statement, it need not explain the materiality of each statement. That said, the instant Indictment does allege materiality; it speaks to the use of both "materially false and fraudulent pretenses, representations and promises" and "materially false statements."[5] Indictment at 7-8 (DE 1). Furthermore, although the Indictment need only allege materiality "in substance" – it need not spell out the Government's theory of materiality – the instant Indictment goes beyond alleging materiality "in substance." See United States v. McGough, 510 F.2d 598, 602-03 (5th Cir. 1975)[6] (indictment need not allege array of facts enabling conclusive determination of whether a false statement is material). Specifically, paragraphs 15(a) and 15(b) refer to

---

[5] Materiality is an element of mail fraud and wire fraud. Neder v. United States, 527 U.S. 1, 3 (1999). And although the conspiracy count here does allege materiality, the word "materiality" need not actually appear in the Indictment because the element of materiality is inferred from the legal meaning of the term "fraud." Id.

[6] In Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent the decisions of the Fifth Circuit rendered prior to October 1, 1981.

obtaining money and property from others by means of materially false and fraudulent pretenses; paragraph 16 is more specific, describing the object of the conspiracy as sending materially false mortgage applications and Settlement Statements to lenders to induce their funding mortgages and closing on loans; paragraph 18 goes further, explaining that the false documentation was submitted so that the purchasers might qualify for the loans and identifying the types of false statements made for that purpose. Hence, materiality is more than adequately set forth so that Stoll may understand the crime with which he is charged.

Stoll next argues that the Indictment fails because it does not identify the property or money obtained. Preliminarily, the undersigned again notes that conspiracies need not be alleged with the same specificity as a substantive charge. See United States v. Yonn, 702 F.2d 1341, 1348 (11th Cir. 1983) ("[A]n indictment for conspiracy to commit a criminal offense need not be as specific as a substantive count.") (internal quotations and citations omitted). That said, Paragraph 16 indicates that the object of the conspiracy was to use false statements to induce lenders to fund mortgages on properties. The Indictment then sets forth 14 such properties. In similar fashion, each substantive mail fraud, wire fraud, and false statement count refers to a specific property obtained through a fraudulently induced mortgage.

Stoll counters that the Indictment is open-ended, enabling the Government to impermissibly amend and shift its allegations. He argues that although the Indictment specifically identifies only 14 properties, the pleading refers to 38 properties, and the Government's Bill of Particulars includes 68 properties. Again, however, a conspiracy indictment need not allege every overt act taken in furtherance of the conspiracy. See

United States v. Elliott, 571 F.2d 880, 911 (5th Cir. 1978) (Government is not limited to overt acts pled in the indictment in proving a conspiracy and may show other acts of conspirators occurring during the conspiracy). The additional properties of which Stoll complains are evidence of the same mortgage fraud conspiracy – the same agreement and pattern of illegality – alleged in the Indictment. See United States v. Colasurdo, 453 F.2d 585, 590-91 (2nd Cir. 1971). And presenting additional evidence of acts taken in furtherance of the conspiracy – acts that took place during the time period alleged in the Indictment, through the manner and means alleged in the Indictment, and with the objects alleged in the Indictment – would not impermissibly amend the Indictment; it would simply be a presentation of all the evidence of the illegal agreement indicted by the Grand Jury.

Stoll next argues that the Indictment fails to draw a clear distinction between his role and those of his co-defendants.[7] The undersigned is not persuaded. Although not required, the conspiracy count here does identify Stoll and his role; it identifies Stoll as the owner of both TurnKey Title and The Lending House, and it identifies his role as that of a licensed mortgage broker and closing agent. The Indictment further alleges that Stoll's companies: held an account for co-defendant Guaracino that was used to transfer funds in furtherance of the conspiracy; received checks from Guaracino in furtherance of the

---

[7] At the hearing, the Government offered an analogy in support of its argument that a conspiracy charge need not draw role distinctions. The Government proffered the example of multi-defendant narcotics conspiracy charges, which need not – and do not – distinguish the roles of the various co-defendants, such as financiers, suppliers, transporters, distributors, and money couriers. Mindful that the essence of a conspiracy charge is the agreement itself, the undersigned concurs with the Government's argument. The undersigned further notes that, in contrast to most narcotics conspiracy charges, the fraud conspiracy charge here does draw role distinctions, and it does so to a far greater extent than is seen in most indictments.

14

conspiracy; and received fraudulent "escrow withholds" and closing fees for the mortgages issued. In addition, the Indictment alleges that Stoll participated in the closings, and it alleges his participation in 66 overt acts. To the extent Stoll believed more information would assist his trial preparation, he sought that information through a Bill of Particulars, the very purpose of which is to "amplif[y] the indictment by providing additional information." United States v. Johnson, 575 F.2d 1347, 1356 (5th Cir. 1978); see United States v. Martinez, 466 F.2d 679, 686 (5th Cir. 1972) ("The purposes of a Bill of Particulars are to inform the defendant of the nature of the charge against him with sufficient precision to enable him to prepare his defense, and to avoid or minimize the danger of surprise at trial."). Here, the Court granted, in part, Stoll's motion for particulars, and the Government provided those particulars, as ordered (DE 269, 320, 425).

### 4. Stoll's Arguments as to the Sufficiency of the Substantive Counts

Stoll incorporates his arguments regarding the sufficiency of the conspiracy count into his arguments concerning the substantive mail fraud, wire fraud and false statement counts. Further, to the extent that the substantive counts must be pled with greater particularity than the corresponding conspiracy count, they satisfy that requirement. Each substantive count identifies a particular date, a particular property being purchased, and a particular mailing, wiring, or false statement. Not only does each substantive count track the language of the pertinent statute, but by also incorporating the conspiracy count, each gives Stoll sufficient notice of the crime with which he is charged.

With respect to the obstruction of justice charge (Count 34), Stoll similarly argues that it is not sufficiently pled. But by tracking the wording of the obstruction statute (18 U.S.C. § 1512(b)(3)) and by identifying the time, place, and participants, Count 34 passes

15

constitutional muster.  Harrell, 737 F.2d at 975.  Count 34, however, does more than

merely track the statutory language.  Count 34 identifies: the participants, as Stoll and co-

defendant Orchard; the "misleading conduct," as deleting and causing the deletion of

documents from broker files of Stoll's company (The Lending House); the deleted

documents, as items that were subject to a Florida Department of Financial Regulation

subpoena; Stoll's deletion of the documents, as a response to the subpoena; and the

individual who was misled by the deletion, as an investigator with the Department.  The

count also includes an aiding and abetting allegation.  These details provide Stoll with

sufficient information to identify the crime with which he is charged and to prepare his

defense.  The evidentiary details, whose omission he highlights – the identity of the specific

files deleted and the persons responsible for their deletion, the reason the documents were

false, and the Government's theory of how the documents could have revealed criminal

conduct – are not required to define the offense.  They are matters reserved for discovery

and proof at trial.[8]

Stoll's final argument with respect to Count 34 is that by alleging that the offense

occurred "on or after November 19, 2007," the Indictment fails to sufficiently allege the time

of the offense.  But it is "hornbook law that great generality in the allegation of date is

allowed – at least where . . . the exact time of the crime's commission is not important

under the statute allegedly violated."  United States v. Steele, 178 F.3d 1230, 1233 (11th

Cir. 1999) (citing United States v. Nunez, 668 F.2d 10, 11-12 (1st Cir.1981) (internal

---

[8] The undersigned notes that during pretrial discovery the Government provided
Stoll with a list of the documents believed to have been deleted.  Further, in response to
the Court's order granting Stoll's request for particulars, the Government identified the
Department of Financial Regulation investigator.

16

citation and quotation marks omitted) (per curiam); United States v. Perez, 67 F.3d 1371, 1377 (9th Cir.1995) ("Furthermore, because time is not an element of the crime of distributing heroin, the indictment was not fatally broad for failing to include precise dates of distribution."), withdrawn in part on other grounds, 116 F.3d 840 (9th Cir.1997); United States v. Jaswal, 47 F.3d 539, 542-43 (2d Cir.1995) ("The failure to include the year in Count IV of the indictment is not fatally defective because the exact time when the defendants committed the crime in this case is immaterial.") (per curiam); Butler v. United States, 197 F.2d 561, 562 (10th Cir.1952) ("Where time is not an essential element of the offense, it is sufficient to charge facts which show that the offense was committed within the statutory period of limitation and in such a case, even though there be a defect in the allegation as to time, it is one of form only.")).

In assessing the "on or after" language appearing in Count 34, the undersigned is mindful that the ultimate issue is whether the offense is charged with sufficient specificity to enable Stoll to adequately prepare his defense. See Steele, 178 F.3d at 1235 ("[W]e conclude that, although we would have preferred that the government provide more precise dates . . . the failure to do so did not preclude [the defendant] from adequately preparing his defense."). Here, the precise date of the deletion is not critical, as only one subpoena was served on The Lending House by a State of Florida Department of Financial Regulation investigator and that service occurred on the beginning date set forth in Count 34 – November 19, 2007.[9] Further, the language of the charge compels the inference that

---

[9] At the hearing on the motions, the Government acknowledged that it could have specified an ending date, which would have been the date on which Stoll tendered the documents in response to the subpoena.

17

the alleged deletion could not have occurred any later than the date Stoll responded to the subpoena, a date of which he is well aware. See id. at 1234-25 (holding that dates sufficiently pled where defendant "has records and receipts to which he can refer to identify the dates of the alleged offenses").

In support of its argument that the "on or after November 19, 2007" language is impermissibly open-ended, Stoll cites United States v. Cicil, 608 F.2d 1294 (9th Cir. 1979). See Motion at 10 (DE 307). But Cecil is distinguishable, as the indictment in that matter alleged not one, but two open-ended dates – both at the beginning and at the end of the conspiracy – resulting in no temporal mooring to the alleged crime. By contrast, Count 34 here sets forth a definitive start date and is only open-ended on one side. Cf. United States v. Rawlins, 606 F.3d 73, 79 (3d Cir. 2010) (distinguishing Cecil because indictment at issue was only open-ended on one end); United States v. Pease, 240 F.3d 938, 942-43 (11th Cir. 2001) (upholding conspiracy indictment with open-ended start date). Here, the obstruction of justice charge (Count 34) is tied to a specified start date, the charged offense refers to the lone subpoena for certain identified files that was served by a particular agency on a specific entity, and the offense could not have occurred any later than Stoll's own proffer in response to the subpoena.

B.      Motion as to Sufficiency and Applicability of § 1001 – Counts 26-33

On September 17, 2010, Stoll filed a Motion to Dismiss Counts 26 Through 33 (DE 305). On October 18, 2010, the Government responded (DE 431), and on October 25, 2010, Stoll replied thereto (DE 460). Pursuant to the undersigned's order, on November 4, 2010, the Government filed a sur-reply (DE 505).

In his Motion, Stoll argues that "the Indictment fails to allege a violation of 18 U.S.C.

18

§ 1001 because it does not allege that the representations made were factually inaccurate"; he also argues that "the representations on which the Government bases the 18 U.S.C. § 1001 counts are not a matter within the jurisdiction of a United States department or agency." Motion at 1 (DE 305). The undersigned, however, does not find Stoll's arguments persuasive.

In pertinent part, 18 U.S.C. § 1001 provides that it is unlawful, in a matter within the jurisdiction of the executive branch of the United States Government, to knowingly and willfully: falsify, conceal, or cover up by any trick, scheme, or device a material fact; make "any materially false, fictitious, or fraudulent statement or representation"; or, make or use "any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry." 18 U.S.C. § 1001(a) (emphasis added).

Here, the language of the Indictment tracks the language of the statute. More specifically, the preamble to Counts 26-33 states:

> On or about the dates enumerated as to each count below, at Broward County in the Southern District of Florida, and elsewhere, the defendants enumerated as to each count below, in a matter within the jurisdiction of the United States Department of Housing Development ("HUD"), a Department of the United States, aided and abetted and wilfully caused to be made materially false and fraudulent and fictitious statements and representations as set forth below on the HUD1 Settlement Statements for the property indicated, when in truth and in fact, as defendants well knew, such statements were materially false and fraudulent."

Indictment ¶ 49 (DE 1) (emphasis added). The preamble is followed by a chart containing the charging language of Counts 26-33. The chart contains four columns: the count number; the identity of the defendants charged in the respective count (Stoll is charged in all counts); the date of the alleged misrepresentation; and (under the heading "False

19

Statement in HUD1") a description of the allegedly false statement made by Stoll (and others) in the HUD1 Settlement Statement for the purchase of a specific property. Furthermore, the Indictment identifies each of those "materially false and fraudulent and fictitious statements" by date, by property, and by line number in the HUD1 in which it appeared; it also explains the basis for alleging that each identified statement was false.

To the extent Stoll is suggesting that Counts 26-33 fail to allege that the representations are false or fraudulent, his suggestion is belied by the language of the Indictment. The preamble (¶ 49) clearly alleges that all the identified statements in the HUD1s were "materially false and fraudulent and fictitious," and each count identifies a particular "false statement in HUD1," followed by the truth ("when in truth and in fact") as to each statement.

To the extent Stoll is suggesting, not a failure to allege a false or fraudulent representation, but an inability to prove a factual inaccuracy – "there can be no violation of § 1001 where the statements are factually correct" – this argument also fails. See Motion at 2 (DE 305). First, Stoll's suggestion that the Government cannot prove the factual inaccuracy of a statement is a challenge to the sufficiency of the evidence, not to the sufficiency of the Indictment. As Federal Rule of Criminal Procedure 12 makes clear, a pretrial motion is not the proper vehicle through which to raise a challenge to the sufficiency of the evidence. See Fed. R. Cr. P. 12(b)(2) ("A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue."). With respect to Rule 12, the Eleventh Circuit has observed:

> [A] pretrial motion to dismiss [an] indictment cannot be based on a sufficiency of the evidence argument because such an argument raises factual questions embraced by the general

20

> issue. Rule 12 is not intended to authorize speaking motions
> through which the truth of the allegation in an indictment are
> challenged.

United States v. Ayaraza-Garcia, 819 F.2d 1043, 1048 (11th Cir. 1987)  (citations and

internal quotations omitted); accord United States v. Delaurentis, 230 F.3d 659, 660-61 (3d

Cir. 2000) (stating that pretrial motion to dismiss an indictment is not a permissible vehicle

for addressing the sufficiency of the Government's evidence); United States v. Adkinson,

135 F.3d 1363 (11th Cir. 1998) (court cannot consider challenge to sufficiency of evidence

before trial).   Instead, a Rule 12 motion to dismiss must be based on some defect

appearing on the face of the challenged indictment.  See United States v. Mann, 517 F.2d

259, 266-67 (5th Cir. 1975) (stating that an indictment is to be tested not by the truth of its

allegations, but by its sufficiency to charge an offense, because the allegations in the

indictment must be taken as true).  For the Court to determine the validity of Stoll's claims

that the entries in the HUD1s are factually accurate – assuming that "factual inaccuracy"

were a required element – it would have to conduct a "trial of the general issues," in

contravention of the provisions and purpose of Rule 12(b)(2).

The second flaw is Stoll's argument is contained within his underlying assertion –

"there can be no violation of § 1001 where the statements are factually correct."  That

assertion, however, is not well-founded.  A factually accurate entry can still be false and

fraudulent; a purportedly factually accurate statement to a Government agency can be

impliedly false and, therefore, within the scope of § 1001.  By way of example, in United

States v. Brown, 151 F.3d 476, 485 (6th Cir. 1998), the court rejected the defendant's

argument that the (false) statement for which he was charged was literally true: "[W]e

conclude that the body of law, in the aggregate, makes plain that implied falsity is a basis

for a conviction." See United States v. Bizzell, Nos. 92-6008, 92-6166, 1993 WL 411470, at * 3 (10th Cir. Aug. 17, 1993) (impliedly false statement regarding cash from borrower on HUD-1); United States v. Sasser, 971 F.2d 470, 476 (10th Cir. 1992) ("A false statement . . . can be implied by use of a document [that] makes the factual assertions necessarily implied from the statutes, regulations, and announced polic[y] . . . ."); United States v. Concemi, 957 F.2d 942, 950-51 (1st Cir. 1992) (failing to disclose on HUD-1s the existence of second mortgage on properties); United States v. Waechter, 771 F.2d 974, 978-79 (6th Cir. 1985) (stating that a documentary factual assertion may be either express or implied; "[U]se of a document makes a factual assertion of those propositions that are necessarily implied by the system of statutes, regulations, and announced policies which created the document."). Here, the Government has proffered that it will establish at trial that HUD created the Settlement Statements at issue, that there are well-established industry practices concerning the degree of disclosure required on the HUD-1 Settlement Statements, and that it will highlight applicable provisions of the Real Estate Settlement Procedures Act ("RESPA") that bear on the alleged misrepresentations.

Stoll's second argument for dismissing the false statement counts is that the representations at issue are not matters within the jurisdiction of a United States department or agency and, therefore, are not violative of 18 U.S.C. § 1001. In support of this argument Stoll proffers that HUD has no power, authority, or involvement in private-party closings and that the HUD-1 forms are not for department use or sent to HUD by the parties to the transactions. This second argument, like the first, runs afoul of Federal Rule of Criminal Procedure 12(b)(2). Factual challenges are not a proper basis for a motion to dismiss; a motion to dismiss can be determined pretrial only if it involves questions of law,

not questions of fact. See United States v. Devegter, 198 F.3d 1324, 1326-27 (11th Cir. 2000). Framed as an attack on the factual sufficiency of the Indictment, this second argument too must fail.

Furthermore, by submitting that the Government cannot prove such matters as the submission of the Settlement Statements to HUD or HUD's involvement in the closings, Stoll appears to misconstrue what is required under § 1001. "The Supreme Court has repeatedly held that the term '[within the] jurisdiction' should not be given a narrow or technical meaning for purposes of § 1001." United States v. Gibson, 881 F.2d 318, 322 (6th Cir. 1989) (quoting Bryson v. United States, 396 U.S. 64, 70 (1969)). "Federal departments and agencies have the power to exercise authority in a great many matters not completely controlled by those departments or agencies." Gibson, 881 F.2d at 322. As the Sixth Circuit has noted:

> [There is] no implicit requirement that the [false] statements be made directly to, or even be received by, the federal department or agency. False statements made in any matter within the agency's jurisdiction are within the scope of § 1001, and courts have upheld § 1001 convictions for false statements made to private entities receiving federal funds or subject to federal regulation or supervision.

United States v. Lutz, 154 F.3d 581, 587 (6th Cir. 1998) (emphasis added); accord Gibson, 881 F. 2d at 322-23 (cataloguing cases affirming § 1001 convictions for false statements made to private entities receiving federal funds or subject to federal regulation or supervision). At bottom, "it is the mere existence of the federal agency's supervisory authority that is important to determining jurisdiction." United States v. Davis, 8 F.3d 923, 929 (2d Cir. 1993); see also United States v. Cartwright, 632 F.2d 1290, 1292-93 (5th Cir. Unit A 1980) (upholding § 1001 conviction for false statements to a savings and loan

23

association insured by the FSLIC). More specifically, and in the context of the forms at issue here, the Sixth Circuit has stated "as a matter of law and common sense, that HUD has jurisdiction over HUD-1 forms." United States v. Wilkins, 308 Fed. Appx. 920, 927 (6th Cir. 2009) (unpublished) (citations and internal quotations omitted). The Wilkins Court explained that a HUD-1 settlement statement form is required by RESPA and by HUD's implementing Regulation X in every closing involving a federally related mortgage loan with a buyer and a seller. See id. Wilkins observed that HUD has the authority to develop and prescribe the HUD-1 form as the standard form in all transactions involving federally related mortgage loans. Id. (citing 12 U.S.C. § 2603(a)). Whether the Government can establish that the lending institutions or loan transactions identified in this Indictment were subject to federal regulation or supervision is a matter properly reserved for trial.

C.      Motion as to Applicability and Constitutionality of §§ 1512, 1515 - Count 34

On September 17, 2010, Stoll filed a Motion to Dismiss Count Thirty-Four (DE 311). On October 15, 2010, the Government responded (DE 424), and on October 22, 2010, Stoll replied thereto (DE 448). Count 34 of the Indictment charges Stoll with obstruction of justice, in violation of 18 U.S.C. § 1512(b)(3) and 2. See Indictment at 54-55 (DE 1).

In his Motion, Stoll raises three arguments for dismissing Count 34: the Indictment fails to state a violation of § 1512(b)(3) because the conduct alleged does not meet the definition of "misleading conduct"; the charge is unconstitutional as applied to Stoll in that both the act of producing and the alternative act of withholding the allegedly false documents in response to the subpoena would violate the statute, leaving Stoll in an irreconcilable and constitutionally impermissible conundrum; and § 1515 is unconstitutionally void for vagueness in that the definition of "misleading conduct" is so

24

vague that it fails to give adequate notice of what the law forbids and impermissibly delegates to law enforcement to resolve on an *ad hoc* and subjective basis what violates the law.[10] See Motion at 1-2 (DE 311).

The assessment of Stoll's arguments must commence with a review of the pertinent statutes, as well as a review of the challenged charge. In pertinent part, 18 U.S.C. § 1512 makes it unlawful for anyone to "engage[] in misleading conduct toward another person, with intent to . . . hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense . . . ." 18 U.S.C. § 1512(b)(3) (emphasis added). A related section, § 1515(a)(3), sets forth five (alternative) definitions of the term "misleading conduct":

    (A)    knowingly making a false statement;

    (B)    intentionally omitting information from a statement and thereby causing a portion of such statement to be misleading, or intentionally concealing a material fact, and thereby creating a false impression by such statement;

    (C)    with intent to mislead, knowingly submitting or inviting reliance on a writing or recording that is false, forged, altered, or otherwise lacking in authenticity;

    (D)    with intent to mislead, knowingly submitting or inviting reliance on a sample, specimen, map, photograph, boundary mark, or other object that is misleading in a

---

[10] "[F]or purposes of preserving the issue on appeal," Stoll raises a fourth argument: § 1512(b)(3) is void for vagueness and exceeded Congress' authority. Motion at 2 (DE 311). Stoll, however, acknowledges that the Eleventh Circuit has previously rejected challenges to § 1512(b)(3) on these grounds and that this Court is bound by those decisions. See United States v. Ronda, 455 F.3d 1273 (11th Cir. 2006); United States v. Veal, 153 F.3d 1233 (11Cir. 1998).

material respect; or

(E)     knowingly using a trick, scheme, or device with intent to
mislead.

18 U.S.C. § 1515(a)(3)(A)-(E).  It is against this backdrop that the court must examine the

challenged count.  Count 34 charges:

> On or after November 19, 2007, in the Southern District of
> Florida, the defendants, STEVEN STOLL and STEPHEN
> ORCHARD did knowingly engage and attempt to engage in
> misleading conduct toward another person, to wit: an
> investigator with the State of Florida Department of Financial
> Regulation, with the intent to hinder, delay or prevent the
> communication of information relating to the possible
> commission of a Federal offense to a law enforcement officer
> and judge of the United States, in that, in response to a
> subpoena issued by the State of Florida Department of
> Financial Regulation, the defendant deleted and caused the
> deletion of documents contained in the broker files of The
> Lending House, Inc., which contained materially false and
> fraudulent information and which may have revealed criminal
> conduct in violation of Title 18, United States Code, Sections
> 1001, 1341, and 1343.
>
> All in violation of Title 18, United States Code, Sections
> 1512(b)(3) and 2.

Indictment at 54-55 (DE 1).

Stoll's acknowledges that "[t]he gravamen of the charge [Count 34] is the removal

of allegedly false documents from the files of The Lending House prior to production of the

files to a state investigator."  Motion at 2 (DE 311).  But he argues that the alleged conduct

does not constitute "misleading conduct," as defined in § 1515.  More specifically, he

maintains that the definitions found in subsections (3)(A) and (3)(B) do not apply because

they are directed to the making of a "statement," not the production of records to an

investigator.  In addition, he maintains that sections (3)(C) and (3)(D) do not apply because

26

they proscribe submitting or inviting reliance on false documents, not the withholding or the failing to produce documents (as is alleged here).  Finally, he maintains that section (3)(E) does not apply because "using a trick, scheme, or device" requires an affirmative act beyond a failure to disclose.  Id. at 3.  The undersigned, however, is not persuaded.

Removing allegedly false and fraudulent documents from his company's mortgage files in response to a subpoena does constitute "misleading conduct," as defined in subsection (3)(B); that subsection incorporates "intentionally omitting information from a statement and thereby causing a portion of such statement to be misleading, or intentionally concealing a material fact, and thereby creating a false impression by such statement."  18 U.S.C. § 1515(a)(3)(B).  Stoll's argument against application of this subsection is predicated on the erroneous assumption that a "statement" must be an oral assertion.  It is well-settled, however, that nonverbal conduct, such as "[t]he act of producing evidence in response to a subpoena . . . has communicative aspects of its own." In re Grand Jury Subpoena Dated April 9, 1996, 87 F.3d 1198, 1200 (11th Cir. 1996) (quoting Fisher v. United States, 425 U.S. 391, 410 (1976)) (evaluating whether communicative aspects of production are "testimonial" for Fifth Amendment purposes).  More specifically, "[t]he production of documents conveys the fact that the documents exist, that they were in possession of the witness, and that they were the documents subject to the subpoena."  Id.; see also United States v. Jacques Dessange, Inc., No. 99 CR. 1182 DLC., 2000 WL 280050, at *5 (S.D.N.Y. March 14, 2000) (finding that defendant violated § 1512(b)(3), proscribing misleading conduct, by causing files related to fraudulent visa applications to be altered, by destroying incriminating documents, and by creating bogus documents before producing the altered files in response to a Grand Jury

27

subpoena). Furthermore, the definition of "misleading conduct" found in (3)(B) expressly deems the concealing of a material fact to be a "statement."  See 18 U.S.C. § 1515(a)(3)(B) (prohibiting "intentionally concealing a material fact, and thereby creating a false impression by such statement.").

Here, the Florida Department of Financial Regulation subpoena commanded the records custodian of The Lending House, Inc., one of Stoll's companies, "to produce for inspection . . . : Complete mortgage loan files . . . ." Subpoena Duces Tecum (attached to Government's Response) (DE 424-1) (emphasis added). As alleged in Count 34, Stoll and a co-defendant deleted from the broker files certain documents prior to production. When Stoll and his co-defendant then caused incomplete files to be produced in response to the subpoena, they made a statement – albeit false – that the documents they were producing in response to the subpoena were the "complete mortgage loan files." If, as alleged, the defendants deleted certain documents and then produced incomplete files, such an intentional omission and concealment of material facts would constitute a "statement" under (3)(B). In sum, by first deleting and then omitting the deleted documents from the subsequent production, Stoll and Orchard caused the statement made by the production – the assertion that they were producing the "complete mortgage loan files" commanded by the subpoena – to be false and "misleading" within the meaning of 18 U.S.C. § 1515(a)(3)(B).

Yet, even if the file production (minus the deleted documents) were not a "statement," it would still be "misleading" under an alternative definition found in (3)(E) – a "trick, scheme, or device with intent to mislead." See 18 U.S.C. § 1515(a)(3)(E). Stoll contends that this definition does not apply because his alleged failure to produce certain

documents is not an affirmative act. See United States v. Rigdon, 874 F.2d 774, 779 (11th

Cir. 1989) (holding that defendant who took agent's cash in transaction subject to currency

transaction report requirement without filing report and then spent cash, did not employ

"trick, scheme, or device" to conceal transaction, as required for conviction of concealing

material fact from government agency). But the conduct identified here – deleting

documents from subpoenaed files, with the result that complete cannot be produced – is

not merely a passive failure to provide information. Rather, Stoll's conduct was an

affirmative act that caused the files to be altered and the production to be misleading. In

sum, Stoll's first ground for dismissal fails because the alleged conduct comes within the

scope of at least two definitions of "misleading" under 18 U.S.C. § 1515.[11]

---

[11] At the hearing, Stoll raised a new argument: the Indictment does not expressly allege that there was ever "a response" made to the investigator's subpoena; hence, no misleading conduct was alleged.

Stoll is correct that the Indictment does not expressly allege he actually produced an incomplete file or informed the investigator that he did not possess the subpoenaed records. Yet, given the language of Count 34, such an omission is not grounds for dismissal.

For the court, the ultimate issue is not whether the indictment might have been drafted with more clarity, but whether it conforms to minimal constitutional standards. United States v. Poirier, 321 F.3d 1024, 1029 (11th Cir. 2003). Count 34 states that Stoll engaged in misleading conduct toward the Department investigator when, "in response to a subpoena," he deleted certain documents from his company's broker files. Although greater clarity might have been achieved had the count stated "in responding to a subpoena" or "as part of his response to a subpoena," the lack of linguistic precision is not fatal to the Indictment; the current pleading rules were "designed to eliminate technicalities in criminal pleadings." Resindiz-Ponce, 549, U.S. at 110. A fair reading of the charging language in Count 34 leaves little doubt that Stoll's deletion of documents was part of his overall response to the subpoena. Moreover, Stoll himself read the charging language in precisely such a fashion, as he expressly acknowledged that "[t]he gavamen of the charge is the removal of allegedly false documents from the files of The Lending House prior to production of the files to a state investigator." Motion at 2 (DE 311) (emphasis added). Indeed, by necessary implication, Stoll's deletion of incriminating documents misled the investigator because Stoll's company was thereafter unable to produce, and the investigator was unable to obtain (from Stoll's company), the complete mortgage files.

Stoll's second ground for dismissal is that the charge is unconstitutional as applied. Stoll posits that both the act of producing and the alternative act of withholding the allegedly false documents in response to the subpoena would violate the statute; hence, he is left in an irreconcilable and constitutionally impermissible conundrum. He explains that had he produced the allegedly false documents, he would have violated § 1512(b)(3) because the submission of false writings is one type of "misleading conduct." See 18 U.S.C. § 1515(a)(3)(C). Stated differently, Stoll claims that the very act of producing documents, the contents of which are false or fraudulent, would violate the statute. And based on this claim, he concludes that he faced the impermissible conundrum – violate the law by tendering documents containing false information or violate the law by not complying with the subpoena. In effect, Stoll is invoking his alleged criminality to shield him from the law.

As defined in subsection (3)(C), "misleading conduct" includes: "with intent to mislead, knowingly submitting or inviting reliance on a writing or recording that is false, forged, altered, or otherwise lacking in authenticity." 18 U.S.C. § 1515(a)(3)(C). Were this statutory definition to be construed as Stoll suggests, ordinary financial institutions – banks, brokerages, insurance companies – would be prohibited from complying with subpoenas in fraud investigations. Yet, as the cases cited by Stoll reflect, the statute is not intended to prevent disclosure of historical documents that may contain falsehoods or fraudulent representations, but to prevent individuals from creating false documents and then inviting investigators to rely on them as true. See United States v. Erickson, 561 F.3d 1150 (10th Cir. 2009); United States v. Tallant, 407 F. Supp. 878 (N.D. Ga. 1975). In Erickson, 561 F.3d 1150, the defendants were charged with producing false, back-dated work orders in

30

response to a grand jury subpoena in an effort to cover up their wrongdoing. And in Tallant, 407 F. Supp. at 888, the court held that the presentation of intentionally falsified records to the SEC constitutes an offense under § 1505; further, it noted that the section is arguably broad enough to include the falsification of records in anticipation of an agency subpoena.

Yet, even if Stoll were correct in asserting that the production of historical documents containing false information comes within the definition of "misleading conduct" under § 1515(a)(3)(C), such production still does not violate the obstruction of justice statute – §1512. More specifically, § 1512(b)(3) proscribes the production of such documents where "the intent [is] to . . . hinder, delay, or prevent the communication . . . of information." 18 U.S.C. § 1512(b)(3). Had Stoll produced the "complete mortgage loan files," as the subpoena commanded, he would not have hindered, delayed, or prevented the communication of information, nor would he have produced the files with that intent. The opposite is so. By removing the allegedly incriminating documents from the subpoenaed files, Stoll intended to hinder the communication of information relating to a Federal offense. In sum, because Stoll's production of historical documents, which contained allegedly false and fraudulent information, would not have run afoul of the statute, he did not face an impermissible conundrum, and his second argument must fail.[12]

---

[12] The undersigned notes that Stoll did not have the option of withholding the documents on the ground that they may prove incriminating, inasmuch as the subpoena was directed to one of his corporations, The Lending House, Inc. See Braswell v. United States, 487 U.S. 99, 110 (1988) ("[A]n individual cannot rely upon the [Fifth Amendment] privilege to avoid producing the records of a collective entity which are in his possession in a representative capacity, even if these records might incriminate him personally.") (quoting Bellis v. United States, 417 U.S. 85, 88 (1974)).

Stoll's third ground for dismissal is that the definition of "misleading conduct" found in § 1515 is void for vagueness, thereby rendering a prosecution under the "misleading conduct" prong of § 1512(b)(3) unconstitutional.  According to Stoll, the term "misleading conduct" fails to provide adequate notice of what the law forbids.  More specifically, Stoll contends that the statute does not satisfy the constitutional requirement that "the language convey[] sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices."  Motion at 5 (DE 311) (quoting Jordan v. De George, 341 U.S. 223, 231-232 (1951)).

Stoll is correct in asserting that laws must "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly . . . ." Motion at 5 (DE 311) (quoting Grayned v. City of Rockford, 408 U.S. 104, 108 (1972)).  But he is not correct that the statutory definition of "misleading conduct" fails to do so.  Indeed, in rejecting vagueness challenges, multiple courts have cited § 1515(a)(3) – the definitional section for "misleading conduct" – as providing a "detailed definition."  See e.g., United States v. Gabriel, 125 F.3d 89, 104 (2d Cir. 1997) (finding that "misleading conduct" is defined "with particularity" in § 1515(a)(3) and rejecting a vagueness challenge to § 1512(b)(1)); United States v. Kalevas, 622 F. Supp. 1523, 1527 (S.D.N.Y. 1985) (rejecting defendant's vagueness challenge to § 1512 because defendant "ignores the detailed definition of 'misleading conduct' set forth in § 1515").  In Kalevas, the District Court specifically stated that "misleading conduct" is defined "as knowing or intentional conduct, and does so in a manner which adequately apprises a person of the prohibited conduct."  Id. at 1527.

Stoll would have this Court construe the term "misleading conduct" to include both

the production and the withholding of false documents, thereby creating confusion as to the meaning of the term. But, as set forth in more detail above, see supra at 29-30, Stoll's construction rests on the erroneous assumption that producing historical documents containing false information would violate the statute. Stoll further argues that the term "misleading conduct" is rendered vague and confusing by one of its (alternative) definitions, found in 18 U.S.C. § 1515(a)(3)(E) – "trick, scheme, or device." Although he faults Congress for employing vague terminology to define an already vague term, he offers no legal authority for his argument. Nor does the undersigned find the phrase "trick, scheme, or device" to be vague. Indeed, that phrase is invoked not only as one of the alternative definitions of "misleading conduct" in § 1515(a)(3), but it is also invoked as one of the prohibited means by which an individual may make a statement to the Government in § 1001(a)(1). See 18 U.S.C. § 1001(a)(1) ("[W]hoever . . . . knowingly and willfully – falsifies, conceals, or covers up by any trick, scheme, or device a material fact; . . .") (emphasis added).

In sum, Stoll cannot persuasively argue that "an ordinary person" would not know that deleting certain documents in response to a subpoena would constitute "misleading conduct." See United States v. Biro, 143 F.3d 1421, 1426 (11th Cir. 1998) ("In determining whether a statute provides actual notice, we must decide whether an ordinary person could 'reasonably understand that his contemplated conduct is proscribed.'") (quoting United States v. National Dairy Prods., Corp., 372 U.S. 29, 32-33 (1963)). Stated differently, Stoll cannot be fairly heard to argue that the statutes at issue do not provide a "person of ordinary intelligence" with a "fair warning" and with "a reasonable opportunity to know" that deleting documents in response to a subpoena is prohibited by law. Motion at 5 (DE 311)

(quoting Grayned v. City of Rockford, 408 U.S. 104, 108 (1972)).  Stoll's third argument,

therefore, must also fail.

VI.    RECOMMENDATION

For the reasons set forth above, the undersigned concludes as follows:  Counts 1-34

are pled with constitutionally sufficient specificity; Counts 26-33 properly plead a violation

of 18 U.S.C. § 1001, and issues as to the evidentiary sufficiency of the allegations may not

be resolved pretrial; Count 34 adequately states a violation of § 1512(b)(3), and neither

§ 1512(b)(3) nor § 1515(a)(3) are unconstitutional as applied or void for vagueness.

Accordingly, the undersigned respectfully RECOMMENDS that Defendant Steven Stoll's

Motion to Dismiss Counts One Through Thirty-Four of the Indictment for Lack of Specificity

(DE 307), Defendant Steven Stoll's Motion to Dismiss Counts 26 Through 33 (DE 305),

and Defendant Steven Stoll's Motion to Dismiss Count Thirty-Four (DE 311) be DENIED.

The parties will have fourteen (14) days from the date of being served with a copy

of this Report and Recommendation within which to file written objections, if any, with the

Honorable James I. Cohn, United States District Judge.  Failure to file objections timely

shall bar the parties from a de novo determination by the district judge of an issue covered

in the report and shall bar the parties from attacking on appeal factual findings accepted

34

or adopted by the district judge except upon grounds of plain error or manifest injustice.

See 28. U.S.C. § 636(b)(1); Nettles v. Wainwright, 677 F.2d 404, 410 (5th Cir. Unit B 1982)

(en banc).

DONE and SUBMITTED at Fort Lauderdale, Florida this 23rd day of November

2010.

BARRY S. SELTZER
United States Magistrate Judge

Copies furnished to:

Honorable James I. Cohn
United States District Judge

All counsel of record

35